IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DOUGLAS W. BEAN                                              PLAINTIFF

                    v.                    Civil No. 11-3019

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      Factual and Procedural Background**

        Plaintiff, Douglas W. Bean, brings this action seeking judicial review, pursuant to 42 U.S.C.

§ 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his applications for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act ("the Act").

        Plaintiff protectively filed his applications on November 4, 2008, alleging a disability onset

date of September 24, 2008, due to depression, bilateral knee pain, right shoulder pain, and low back

pain.  Tr. 57.  On the alleged onset date, Plaintiff was forty seven years old with a high school

education and some college, as well as two years of military service.  Tr. 21, 63, 334-335.  He has

past work as a fry cook, food prep assistant, assembly production worker, pipe fitter/construction

helper, heavy equipment operator, restaurant cook, and poultry eviscerator.  Tr. 58-59, 371-372.

        Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 44-48.  At

Plaintiff's request, an administrative hearing was held on November 19, 2009.  Tr. 314-329.  A

supplemental hearing was held on July 14, 2010.  Tr. 330-383.  Plaintiff was present at this hearing

and represented by counsel.  The ALJ rendered an unfavorable decision on August 24, 2010, finding

Plaintiff was not disabled within the meaning of the Act.  Tr. 7-23.  Subsequently, the Appeals Council denied Plaintiff's Request for Review on January 20, 2011, thus making the ALJ's decision the final decision of the Commissioner.  Tr. 3-4A.  Plaintiff now seeks judicial review of that decision.

II.    **Medical History**

A.  <u>Northern Wisconsin Bone & Joint Center</u>

In 1993, Plaintiff injured his right knee in a forklift accident at work.  Tr. 239.  As a result, Plaintiff filed a worker's compensation claim and underwent a right arthroscopic partial meniscectomy.  Tr. 239.

In January 1996, Plaintiff was involved in a motor vehicle accident in which he injured his left knee and right elbow.  Tr. 237-279.  Kevin L. Tadych, M.D., suspected a probable meniscus tear and lateral epicondylitis of the right elbow.  Tr. 243-244.  An MRI of Plaintiff's left knee, dated February 5, 1996, revealed an extensive medial meniscus tear, an anterior cruciate ligament ("ACL") tear, and increased joint fluid.  Tr. 245.  Dr. Tadych recommended left arthroscopic ACL reconstruction and possible partial meniscectomy.  Tr. 242.  However, Plaintiff was financially unable to undergo the surgery.  Tr. 241.

Plaintiff returned to the clinic on August 12, 1996, with complaints of right knee pain.  Tr. 239.  An MRI of Plaintiff's right knee, dated August 19, 1996, revealed joint effusion, an ACL tear, and tears of the anterior and posterior horn of the medial meniscus.  Tr. 246.  Plaintiff was fitted for an ACL brace for his right knee and a heel wedge for his right foot.  Tr. 272, 274-275.  Dr. Tadych recommended an ACL reconstruction and menisci repair arthroscopically.  Tr. 238.  He noted that Plaintiff was disabled due to bilateral knee problems and had difficulty with ambulation and his

-2-

ability to carry.  Tr. 238.  However, Plaintiff was discharged from Dr. Tadych's care because he did not pay his outstanding bill.  Tr. 237-238.

On February 22, 1999, Plaintiff was scheduled to undergo ACL reconstruction of the right knee.  Tr. 219-224.  However, it does not appear from the record that Plaintiff followed through with the surgery.

   B.  <u>Burnett-Croom-Lincoln-Paden Clinic</u>

Plaintiff saw Richard L. Burnett, M.D., for routine medical care.  Tr. 193-215.  On March 10, 2003, Plaintiff stated he heard a pop when he bent over to pick up a tub of parts.  Tr. 210.  On examination, Plaintiff had a positive straight leg raise, greater on the left, and pain at L3-L5.  Tr. 210. Plaintiff was diagnosed with low back pain and prescribed Flexeril and a Medrol dose pack.  Tr. 210. He was restricted to light duty with no bending or lifting over five pounds.  Tr. 210.  At a follow-up appointment, Plaintiff reported continued back pain.  Tr. 208-209.  An MRI of Plaintiff's lumbar spine revealed low grade degenerative change including traction spurring plus some minor facet degenerative changes at several levels.  Tr. 215.  No frank disc herniations were noted at any level, but there was small degenerative bulging posteriorly at T11-T12 without significant stenosis.  Tr. 215.  No significant acute processes were appreciated.  Tr. 215.  Dr. Burnett gave Plaintiff a pain injection, prescribed Darvocet and Vioxx, and referred Plaintiff for physical therapy.  Tr. 207.  He restricted Plaintiff to light duty with no kneeling or stooping and no lifting over twenty pounds.  Tr. 207.  On August 15, 2003, Plaintiff was released to perform regular work duty.  Tr. 204.

In August and September 2003, Plaintiff repeatedly called the clinic requesting narcotics. Tr. 198-203.  On October 10, 2003, Dr. Burnett released Plaintiff to return to "heavy work," which he limited to lifting seventy pounds and carrying sixty pounds.  Tr. 196.  On January 22, 2004,

Plaintiff called the clinic and requested narcotics.  Tr. 194.  Plaintiff stated that he bought pain medication from another clinic patient and would sue the clinic if this patient received his medications.  Tr. 194.  As a result, Plaintiff was terminated as a patient due to narcotic abuse.  Tr. 194.  In February 2004, he was advised to seek treatment at the Veterans Administration ("VA") in Little Rock.  Tr. 193.

      C.  Baxter Regional Medical Center

On February 21, 2006, Plaintiff was treated for right foot and right shoulder pain after his shoulder reportedly "popped" while lifting pipes.  Tr. 289-298.  On January 15, 2007, Plaintiff was treated for right shoulder pain that began while he was working under his house.  Tr. 289-292.  Jennifer Sadler, M.D., noted that Plaintiff had a known rotator cuff tear and if he was not going to have surgical repair, he needed to get his pain controlled through his primary care physician.  Tr. 290-291.  Dr. Sadler prescribed Ultram and instructed him to follow up with his primary care physician.  Tr. 291.

      D.  North Central Arkansas Medical Associates

On March 20, 2006, Plaintiff presented to North Central Arkansas Medical Associates with complaints of right shoulder and right foot pain.  Tr. 300-309.  On examination, Plaintiff had right shoulder pain at 60 degrees in the arc.  Tr. 307.  No tenderness was noted around the shoulder joint space.  Tr. 307.  Plaintiff's grip was strong and his deep tendon reflexes and sensation were intact.  Tr. 307.  Plantar fascia point tenderness was noted in the right foot, which was exacerbated by dorsiflexion.  Tr. 307.  Plaintiff was diagnosed with right shoulder pain and plantar fasciitis.  Tr. 307.  He received a trigger point injection in his shoulder, which provided good relief.  Tr. 307.  At a follow-up appointment on March 27, 2006, Plaintiff stated that his pain was better for two days

following trigger point injection, but then returned.  Tr. 305.  He was referred for an orthopedic consultation.  Tr. 303.

E.  Stone County Medical Center

On April 5, 2006, Plaintiff presented to Stone County Medical Center with complaints of shoulder pain secondary to a work accident.  Tr. 216-218, 311-313.  An MRI of Plaintiff's right shoulder revealed severe degenerative arthritis at the acromioclavicular joint with the possibility of a small rotator cuff tear.  Tr. 216.  On examination, Plaintiff had full passive range of motion in his right shoulder, but lacked approximately twenty degrees of forward elevation.  Tr. 216.  He exhibited tenderness of the anterior acromion and pain to forward elevation.  Tr. 216.  No severe rotator cuff weakness was identified on testing.  Tr. 216.  Charles D. Varela, M.D., diagnosed Plaintiff with status post right shoulder injury with possible rotator cuff injury versus subacromial bursitis and degenerative arthritis of the right acromioclavicular joint.  Tr. 217.  He recommended diagnostic arthroscopy to confirm the presence of a rotator cuff tear.  Tr. 217.  Dr. Varela noted that if Plaintiff had a rotator cuff tear, he would recommend open rotator cuff repair as well as subacromial decompression and resecting the distal clavicle.  Tr. 217.  He restricted Plaintiff to no overhead activities and no lifting greater than twenty pounds with the right arm.  Tr. 218.  Plaintiff was scheduled for surgery on April 25, 2006.  Tr. 312.  However, there is no indication that Plaintiff followed through with surgical intervention.

F.  Vann Smith, Ph.D.

On October 13, 2008, Plaintiff saw Vann Smith, Ph.D., for a neuropsychological evaluation. Tr. 147-154.  On examination, Plaintiff was oriented in all spheres.  Tr. 148.  Plaintiff's mood was mildly dysthymic and his affect was rigid.  Tr. 148.  Plaintiff's memory was intact and his narratives

were marginally fluent but informative, without evidence of associational anomaly. Tr. 148. Thought processes were abstract in quality. Tr. 148. Plaintiff denied suicidal or homicidal ideation. Tr. 148. Dr. Smith estimated Plaintiff's intelligence to lie within the bright normal to superior range. Tr. 148.

On the Wechsler Adult Intelligence Scale, Revised, Plaintiff received a verbal IQ score of 99, a performance IQ score of 110, and a full-scale IQ score of 103. Tr. 148. After administering various neurodiagnostic tests, Dr. Smith diagnosed Plaintiff with cognitive dysfunction, non-psychotic, moderate, chronic, secondary to general medical condition(s), and concluded that Plaintiff was disabled. Tr. 150. He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 40 and gave a fair prognosis. Tr. 151.

In a Mental Residual Functional Capacity ("RFC") Questionnaire, Dr. Smith found Plaintiff unable to meet competitive standards in six unskilled work-related categories and all semiskilled and skilled work-related categories. Tr. 153. He found Plaintiff seriously limited, but not precluded, in six unskilled work-related categories and limited but satisfactory in four unskilled work-related categories. Tr. 153.

G. K. Simon Abraham, M.D.

On December 10, 2008, Plaintiff saw K. Simon Abraham, M.D., for a consultative physical examination. Tr. 155-159. Plaintiff reported a history of lower back, knee, and shoulder pain. Tr. 155. He used over-the-counter pain medications, but took no prescription medication. Tr. 155. Plaintiff reported that he could previously lift 400 pounds, but now could only lift 200 pounds. Tr. 156. On examination, Plaintiff had normal passive range of motion in both shoulders, elbows, wrists, hands, hips, knees, and ankles, and normal range of motion in his cervical and lumbar spine.

-6-

Tr. 157.  Straight-leg raising was negative.  Tr. 158.  Plaintiff had normal reflexes and no signs of muscle weakness or atrophy.  Tr. 158.  Sensation was intact.  Tr. 158.  Plaintiff could hold a pen and write, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand/walk without assistive devices, walk on his heels and toes, and squat/arise from a squatting position.  Tr. 158.  Plaintiff had full grip strength in both hands.  Tr. 158.  Dr. Abraham diagnosed Plaintiff with low back, shoulder, and knee pain, and depression/anger issues.  Tr. 159.  He noted that Plaintiff was able to perform all of the requested physical tasks.  Tr. 159.

     H.  <u>Terry Efird, Ph.D.</u>

     On December 30, 2008, Plaintiff saw Terry L. Efird, Ph.D., for a consultative mental evaluation.  Tr. 164-168.  Plaintiff reported problems with memory and concentration, irritability, excessive worry/anxiety, difficulty with authority figures, and depression.  Tr. 164.  However, he reportedly spent eighteen hours per day on the computer and continued to perform computer repair.  Tr. 164.  He had no prior mental health treatment.  Tr. 165.  When asked about prior employment, Plaintiff stated he had been terminated from several jobs due to his "attitude."  Tr. 165.  However, he maintained that he was terminated from his most recent job in construction because his employer learned that he was a felon.  Tr. 165.

     On examination, Plaintiff was alert and oriented to person, place, and time.  Tr. 166.  Plaintiff's mood was mildly irritable and his affect was appropriate to content.  Tr. 165.  Thought processes were typically logical, relevant, and goal-directed.  Tr. 166.  Plaintiff denied any suicidal or homicidal ideation, but admitted experiencing aggressive thoughts when angry.  Tr. 166.  Dr. Efird diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood and estimated Plaintiff's GAF score at 60-70.  Tr. 167.  Dr. Efird found that Plaintiff's mood and affect

-7-

were not consistent with a severe degree of emotional distress.  Tr. 167.  He also noted that Plaintiff's personality traits and "attitude" would likely impact his functioning, but memory difficulties were not noted on basic cognitive tasks.  Tr. 167.  Dr. Efird found no difficulties with activities of daily living, social skills, communication skills, capacity to perform basic cognitive tasks, attention/concentration, and persistence.  Tr. 167.  He found no obvious evidence of malingering, but noted that Plaintiff's estimated two to four hours of sleep per night was fairly extreme.  Tr. 168.

I.  <u>Agency Consultants</u>

On December 15, 2008, Jim Takach, M.D., and agency consultant, reviewed Plaintiff's medical history and determined he did not have a severe physical impairment.  Tr. 162-163.

In a Mental RFC Assessment dated January 16, 2009, Brad F. Williams, Ph.D., an agency consultant, found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others.  Tr. 171-174.  Dr. Williams found Plaintiff not significantly limited in the fifteen remaining work-related categories.  Tr. 171-172.  He determined Plaintiff could perform work in which interpersonal contact is routine but superficial, complexity of tasks is learned by experience with several variables, judgement is used within limits, and the supervision required is little for routine tasks but detailed for non-routine tasks.  Tr. 173.

III.   **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since September 24, 2008, the alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffered from bilateral knee pain, status post right ACL reconstruction, right shoulder injury with possible rotator cuff injury versus subacromial bursitis and degenerative arthritis in his acromioclavicular joint, degenerative changes in his lumbar and thoracic spine, and adjustment disorder with mixed anxiety and depressed mood, all of which were considered severe impairments under the Act. Tr. 13-14. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 14-16.

At step four, the ALJ found Plaintiff had the RFC to perform light work, except that he would be unable to reach overhead with his dominant, right upper extremity or drive as part of work. Tr. 16-21. Further, the ALJ determined Plaintiff could not climb scaffolds, ladders, and ropes or work at unprotected heights or around dangerous equipment/machines, and could only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance. Tr. 16-21. Mentally, the ALJ determined Plaintiff could perform work in which interpersonal contact is routine but superficial, the complexity of tasks is learned by experience with several variables, judgment is used within limits, and the supervision required is little for routine tasks but detailed for non-routine tasks. Tr.

-10-

16-21.

With these limitations, the ALJ found Plaintiff could not perform his past relevant work.  Tr. 21.  However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1]  Accordingly, the ALJ determined Plaintiff was not under a disability from September 24, 2008, the alleged onset date, through August 24, 2010, the date of the decision.  Tr. 22-23.

## V.    Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) improperly determining his RFC; and (B) failing to fully and fairly develop the record.  *See* Pl.'s Br. 16-24.  For the following reasons, the court finds that substantial evidence supports the ALJ's decision.

### A.   RFC Determination

Plaintiff contends the ALJ's RFC assessment did not properly account for his physical impairments.  *See* Pl.'s Br. 16-18.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as cleaner/housekeeper/maid, of which there are 2250 jobs regionally and 244,000 jobs nationally, and package mail sorter, of which there are 390 jobs regionally and 55,000 jobs nationally.  Tr. 22, 372-375.

-11-

claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

### 1. Physical Impairments

Substantial evidence supports the ALJ's determination regarding Plaintiff's right shoulder pain. Plaintiff injured his right shoulder on February 18, 2006. Tr. 216. An MRI of Plaintiff's shoulder revealed severe degenerative arthritis at the acromioclavicular joint with the possibility of a small rotator cuff tear. Tr. 216. Dr. Varela recommended open rotator cuff repair as well as subacromial decompression and resecting of the distal clavicle. Tr. 217. He restricted Plaintiff to work with no overhead activities and no lifting greater than twenty pounds with the right arm. Tr. 217. Surgery was scheduled for April 25, 2006. Tr. 217. However, there is no indication that Plaintiff underwent surgery. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (failure to follow a prescribed course of treatment without good reason is grounds for denying disability); 20 C.F.R. § 416.930(b).

Plaintiff alleges he could not afford surgery or regular medical care. However, Plaintiff has not sought treatment at any low-cost clinics or charitable organizations in the area. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). As a veteran, Plaintiff would be entitled to receive benefits through the VA. In fact, Dr. Sadler instructed Plaintiff to seek treatment at the VA hospital, but he never completed the application process. Tr. 290-291, 363-368. If Plaintiff's pain was truly disabling, it follows that he would have been more diligent in completing the VA application process or seeking other low-cost treatment. *Id.*

Substantial evidence also supports the ALJ's determinations regarding Plaintiff's alleged knee and low back pain. Although the medical records demonstrate a history of bilateral knee

impairments, Plaintiff did not seek treatment during the relevant time period. *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("a claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications"). Additionally, Plaintiff did not follow through with recommended surgery or seek *any* treatment for alleged knee pain after 1999. *Id; Brown,* 390 F.3d at 540. Plaintiff's lack of treatment is inconsistent with his allegations of disabling knee pain.

Regarding his alleged low back pain, an MRI of Plaintiff's lumbar spine revealed low grade degenerative changes at several levels. Tr. 215. Plaintiff received conservative treatment consisting of physical therapy, light work restrictions, and a pain medication injection. Tr. 207; *see Thomas v. Barnhart,* 130 Fed. Appx. 62, 63 (8th Cir. 2005) (treating physician's conservative treatment was inconsistent with claimant's allegations of disabling pain). On August 15, 2003, Dr. Burnett released Plaintiff to regular work duty. Tr. 204. On October 10, 2003, Dr. Burnett stated Plaintiff could return to "heavy work," which he defined as lifting up to seventy pounds and carrying up to sixty pounds. Tr. 196. Dr. Burnett's work release is inconsistent with Plaintiff's allegation of disabling back pain.

On December 10, 2008, Plaintiff saw Dr. Abraham for a consultative physical evaluation performed at the Administration's expense. Tr. 155-159. On examination, Plaintiff had normal passive range of motion in all his extremities and normal range of motion in his cervical and lumbar spine. Tr. 157. Plaintiff had full grip strength and could hold a pen and write, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand/walk without assistive devices, walk on his heels and toes, and squat/arise from a squatting position. Tr. 158. Dr. Abraham noted that Plaintiff could perform all of the requested tasks. Tr. 159; *see Hutton v. Apfel*, 175 F.3d 651,

655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Significantly, many of Plaintiff's medical records are outside the relevant time period. *See Pyland v. Apfel,* 149 F.3d 873, 877 (8th Cir. 1998) (evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition, but such evidence cannot serve as the only support for disability). Aside from the consultative evaluation performed at the Administration's expense, Plaintiff received no treatment for his physical impairments during the relevant time period. Moreover, Plaintiff worked a total of forty hours per week between two jobs after his alleged onset date and received unemployment benefits in the first and second quarters of 2009. Tr. 20, 51, 343-344, 379-382; *See Goff v. Barnhart,* 421 F.3d 785, 792 (8th Cir. 2005) (work activity was inconsistent with claimant's assertion of disability); *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (the acceptance of unemployment benefits, although not dispositive, is facially inconsistent with a claim of disability). Plaintiff also reported extensive daily activities such as making his bed, cleaning, helping his parents, preparing daily meals, shopping in stores several times per week, and performing computer repair. Tr. 73-77, 164; *see Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). For these reasons, substantial evidence supports the ALJ's determination regarding Plaintiff's physical limitations.

2. <u>Mental Impairments</u>

Substantial evidence supports the ALJ's mental RFC determination. Plaintiff has no history of mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional).

The ALJ did not err in dismissing Dr. Smith's RFC Assessment because it was internally inconsistent and inconsistent with Plaintiff's medical history and reported activities of daily living. Plaintiff had never before sought treatment for or exhibited symptoms consistent with cognitive dysfunction. *Id.* Additionally, it appears that Plaintiff saw Dr. Smith to bolster his claim for disability benefits rather than to obtain medical treatment. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). The ALJ properly took these considerations into account when determining what weight to give Dr. Smith's opinion. Furthermore, the ALJ did not err in adopting Dr. Efird's findings, as they were more consistent with the objective medical evidence. For these reasons, substantial evidence supports the ALJ's determination regarding Plaintiff's mental limitations.

3. Hypothetical Question

Plaintiff argues that the ALJ's hypothetical question did not accurately reflect his shoulder limitations. *See* Pl.'s Br. 17-18. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff*, 421 F.3d at 794 (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). The ALJ may properly exclude any alleged limitation or impairments he rejects as untrue or unsubstantiated. *Hunt*, 250 F.3d at 625. Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations ultimately adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). For these reasons, substantial evidence supports the ALJ's step five determination.

B. Development of the Record

Finally, Plaintiff contends the ALJ erred by not ordering updated radiological imaging of his knees or shoulder. *See* Pl.'s Br. 19-20. The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).

-15-

"It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ fulfilled his duty to fully and fairly develop the record. Plaintiff did not seek consistent treatment for his knee or shoulder impairments. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (ALJ may discount a claimant's complaints based on a failure to pursue regular medical treatment). Furthermore, the ALJ is not required to provide medical treatment for Plaintiff. *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (while it is the ALJ's duty to develop the record, he is under no duty to provide continuing medical treatment for the claimant). The ALJ had sufficient evidence to rely on in making his RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the

record).  Accordingly, the undersigned finds that the ALJ satisfied his duty to fully develop the record.

**VI.**     **Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice.  **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of April 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE